IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jane Burrows, | ) | Civil Action No.: 4:13-cv-2464-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Williamsburg County, Stanley | ) | |
| Pasley, Walt Ackerman, and Phyllis | ) | |
| Underwood, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jane Burrows ("Plaintiff"), represented by counsel, filed this action in state court on May 24, 2013 seeking recovery against Defendants Williamsburg County, Stanley Pasley, Walt Ackerman, and Phyllis Underwood. *See* Compl., ECF 1-1. Plaintiff was employed as a clerk by the Williamsburg County Water and Sewer Authority ("Authority"), Pasley was the County Supervisor, Underwood was the County Controller, and Ackerman succeeded Underwood in a similar, newly created position as County Director of Finance and Administration. Defendants removed the action from the Williamsburg County Court of Common Pleas to this Court on September 11, 2013. *See* Notice of Removal, ECF No. 1. In her Amended Complaint, Plaintiff asserts claims against Defendant County for reverse race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq,* and for breach of contract, and asserts a claim of civil conspiracy against Individual Defendants Pasley, Underwood, and Ackerman. *See* ECF No. 1-1.

On October 31, 2014, Defendants filed a Motion for Summary Judgment. *See* Defs. Mot. for Summ. J., ECF No. 32. Plaintiff timely filed a response in opposition on January 9, 2015, *see* ECF No. 43, and Defendants filed a reply on January 20, 2015, *see* Reply, ECF No. 45. The matter

is now before the Court after the issuance of the Report and Recommendation ("R & R") of United States Magistrate Judge Thomas E. Rogers, III.[1]  *See* R & R, ECF No. 54.  In the R & R, the Magistrate Judge recommends the Court grant Defendants' Motion for Summary Judgment on both federal claims, decline to exercise supplemental jurisdiction over the remaining state law claims, and remand the matter to state court.  *See id.* at 20.

STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the district court.  *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed.  *Id.*  However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court reviews only for clear error in the absence of a specific objection.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The moving party has the burden of proving that summary judgment is appropriate. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874 (4th Cir. 1992). However, '[o]nce the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Id.*, at 874–75. The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* at 875; *Doyle v. Sentry Ins.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Celotex Corp. v. Catrett*,

3

477 U.S. 317, 322 (1986)).   Moreover, the nonmovant's proof must meet "'the substantive evidentiary standard of proof that would apply at a trial on the merits.'"   *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).   In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.   *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case, including citations to the record, are completely and accurately set forth in the Magistrate Judge's Report and Recommendation.   *See* ECF No. 54 at 1–7.   Plaintiff specifically notes that she has no objection to the facts of the case as the Magistrate Judge summarizes them.   Pl. Objs., ECF No. 55 at 4 n.1.   Defendants did not note any objection to the facts as relayed in the R & R.   *See* Defs. Objs., ECF No. 57 at 1.   Thus, the Court adopts the Magistrate Judge's statement of the facts in full.   Briefly stated, Plaintiff has been employed as a temporary clerk in the Williamsburg County Water and Sewer Authority since February of 2012. Pl. Dep. at 29, 55-56 (ECF No. 43-1 at 10, 19-20); Employment Status Forms, ECF Nos. 43-6, 43-8, 43-9.   Plaintiff alleges that she was treated less favorably in regards to her employment status because of her race, Pl. Mem., ECF No. 43-2 at 16-22, and suffered retaliation in violation of Title VII, *id.* at 22-24.   In addition, Plaintiff alleges that Defendants breached a contract to employ her as a non-temporary clerk, and thus make her eligible for county health insurance, *id.* at 12-16, and that Individual Defendants engaged in a civil conspiracy in regards to her employment status, *id.* at 24-28.

4

DISCUSSION

## I.    R & R and Objections

The Magistrate Judge recommends that the Court grant Defendants' Motion for Summary Judgment on Plaintiff's federal claims, decline to exercise supplemental jurisdiction over the state law claims, and remand the remaining claims to state court.  As noted, Plaintiff asserts federal claims for race discrimination and retaliation in violation of Title VII.  *See* ECF No. 1-1.  The Magistrate Judge first finds that the mosaic theory of circumstantial evidence has not been adopted by the Fourth Circuit, and thus to make a claim of race discrimination without direct evidence, Plaintiff must show probative circumstantial evidence.  R&R, ECF No. 54 at 9-11.  The Magistrate Judge finds that Plaintiff failed to present enough circumstantial evidence of race discrimination under this standard, and thus must rely on the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  R&R, ECF No. 54 at 13.  The Magistrate Judge finds that Plaintiff did not meet her *prima facie* case for Title VII discrimination under *McDonnell Douglas*. *Id.* at 13-16.  The Magistrate Judge thus recommends that the Court grant summary judgment to the Defendants on this claim.  *Id.*

The Magistrate Judge next turns to Plaintiff's retaliation claim under Title VII.  The Magistrate Judge recommends that the Court grant summary judgment to the Defendants on this claim as well.  In the R & R, he determines that Plaintiff's claim fails because she did not present evidence that the activity she engaged in was protected under Title VII, and thus failed to present a *prima facie* case for retaliation.  *Id.* at 16-18.

Therefore, the Magistrate Judge finds that both Plaintiff's federal claims fail, and he thus recommends that the Court grant Defendants' Motion for Summary Judgment on these claims.  The

Magistrate Judge then recommends that, if the Court dismisses the federal claims, it should decline to exercise supplemental jurisdiction, and should remand the remaining state law claims for breach of contract and civil conspiracy to the state court.  *Id.* at 18-20.

Plaintiff timely filed objections to the R & R.  *See* Pl. Objs., ECF No. 55.  Plaintiff first objects to the Magistrate Judge's determination that she failed to present a *prima facie* case of race discrimination.  *See id.* at 4.  Specifically, Plaintiff argues that she suffered an adverse employment action, and showed that others who were similarly situated, but not of her race, had better outcomes. *Id.* at 4-6.  Plaintiff then argues that her retaliation claim should survive summary judgment because she engaged in protected activity, and Defendants retaliated against her.  *See id.* at 6-7.

Defendants timely filed objections to the R & R.  *See* ECF No. 57.  Defendants' sole objection to the R & R was to the recommendation that the Court decline supplemental jurisdiction over the state law claims, and remand those claims to state court.  *Id.* at 1.  Defendants argue that the Court should retain jurisdiction of the state law claims in the interests of fairness and judicial economy even if all federal claims are dismissed, and should grant summary judgment for Defendants on the state law claims.  *Id*. at 1-2.

## II.    Race Discrimination

Plaintiff asserts in her objections that she presented sufficient evidence of race discrimination to survive summary judgment.  Pl.  Objs., ECF No. 55 at 4-6.  A plaintiff may show a violation of Title VII through either direct or circumstantial evidence.  There appears to be no objection regarding a lack of direct evidence and therefore, the Court adopts the Magistrate Judge's findings in regards to direct evidence of race discrimination.

When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). The *McDonnell Douglas* framework may be used for race discrimination claims. *See, e.g., Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("[T]he McDonnell Douglas framework, developed for Title VII, has been used to evaluate race discrimination claims . . . ."). Under this framework, the plaintiff must first establish a *prima facie* case for discrimination in violation of Title VII by showing that: 1) she belongs to a protected group, 2) she was performing her job duties at the level expected by her employer, 3) she suffered an adverse employment action, and 4) similarly-situated employees who were not members of the protected class had more favorable outcomes. *White v. BFI Waste Svcs, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Once the plaintiff establishes a *prima facie* case of a Title VII violation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence "that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### A.     *Prima Facie* Case

The Magistrate Judge recommends finding that Plaintiff did not meet her burden of showing a *prima facie* case of Title VII race discrimination. Plaintiff, who is Caucasian, argued that Defendants discriminated against her based on her race by classifying her as a temporary employee,

7

and thus denying her access to healthcare benefits while similarly-situated African-American employees were placed in permanent positions.  Pl. Mem., ECF No. 43 at 20-21.  Defendants argued that Plaintiff had not suffered an adverse employment action, since she was hired as, and remained, a temporary employee, and never sought a non-temporary position with the County.  Def's Mem., ECF No. 32-1 at 9-10.  Defendants further argued that Plaintiff had not shown that similarly situated employees who were not members of the protected class received more favorable treatment, because the two comparable employees Plaintiff identified were not similarly situated to Plaintiff in that their hiring was not controlled by the same people who oversaw hiring for Plaintiff's department.  *Id.* at 10-11.  Defendants thus argued that Plaintiff had not shown a *prima facie* case for Title VII race discrimination.  *Id.*, at 11.

The Magistrate Judge suggests that Plaintiff has likely not met her burden of showing she suffered an adverse employment action.  R&R, ECF No. 54 at 14-15.  Plaintiff argued that she suffered an adverse employment action, because her manager, Whiteside, had verbally promised her that her position would convert to full-time when the Water and Sewer Authority moved to a new building, thereby making her eligible for County health benefits.  Pl. Dep. at 44, 164 (ECF No. 43-1 at 17, 53); Whiteside Dep. at 107 (ECF 43-4 at 49); Boatwright Dep. at 64-65 (ECF No. 43-5 at 10-11).  When Plaintiff, a Caucasian employee, remained on temporary status, and thereby did not receive health insurance benefits, unlike African-American County clerks who were given an employment classification entitling them to County healthcare, Plaintiff argued she suffered an adverse employment action.  Pl. Mem., ECF 43 at 20.  Defendants argued that Plaintiff had not suffered an adverse employment action, because she remained in the same position as when she was

hired, with the same or a better rate of pay.  Def. Reply, ECF 45 at 7 (*citing* Pl. Mem., ECF No. 43 at 20-21; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The Magistrate Judge finds that, in the context of a disparate treatment claim, an adverse employment action is an act that "'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  R&R, ECF No. 54 at 14, (*quoting James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  Such an adverse employment action, the Magistrate Judge finds, must involve a significant change in employment status; for example, hiring, firing, failure to promote, reassignment with significant change in job responsibilities, or a decision causing a significant change in benefits would all be adverse employment actions.  *Id.* at 14-15 (*citing Burlington Industries, Inc.*, 524 U.S. at 761).  While Plaintiff did not receive the health benefits she alleges her manager promised, the Magistrate Judge finds that no decision was made causing a "significant change in benefits."  *Id.* at 15.  Thus, the Magistrate Judge recommends finding that Plaintiff likely did not met her burden of showing an adverse employment action.

In her objections, Plaintiff argues that the decision not to give her a permanent position, which had been promised to her by her manager,[2] adversely affected the benefits of her position, and thus constituted an adverse employment decision.  Pl. Obj., ECF No. 55 at 4-5.  There was, however, no change in Plaintiff's benefit status.  Plaintiff was hired as a temporary employee, and remained a temporary employee.  Therefore, the Court agrees with the Magistrate Judge that Plaintiff has failed to meet her burden of showing an adverse employment action.

---

[2] Although the Court does not reach the issue here, because it remands the state law claims to state court, Plaintiff argued in her breach of contract claim that her manager, Whiteside, had the authority to make her such an employment offer.  Pl. Mem., ECF No. 43 at 12-15.  Defendants argued that all employment offers for the Authority had to meet specific requirements not met by this verbal promise.  Def. Mem., ECF No. 32-1 at 4-7.

Even if the failure to give Plaintiff health benefits constituted an adverse employment action, the Magistrate Judge recommends finding that Plaintiff has not met her burden to show that similarly situated employees of another race were treated more favorably.  R&R, ECF No. 54 at 15. Plaintiff argued that Mary Scott and Yvette Cooper, African-American women who worked as County clerks, but were employed in positions with benefits, were comparable to her.  Pl. Mem., ECF No. 43 at 8-9, 20.  Scott worked for the Treasurer's Office, Pl. Dep. at 99 (ECF 43-1 at 112), and Cooper worked for the Probate Judge.  Pl. Mem., ECF 43 at 8.  Defendants argued that neither Scott nor Cooper was similarly situated to Plaintiff, because both Scott and Cooper were hired by elected officials, who by statute control their own hiring, unlike the Water and Sewer Authority, where hiring is controlled by the County Supervisor.  Def. Mem., ECF 32-1 at 10-11.

> The Magistrate Judge finds that for employees to be similarly situated, a
>
> plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'

R&R, ECF No. 54 at 15 (*quoting Ward v. City of North Myrtle Beach*, 457 F. Supp.2d 625, 643 (D.S.C. 2006) (internal quotations and ellipsis in original)).  The Magistrate Judge finds that though the employee situations do not have to be exactly the same, *id.* (*citing Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)), "the similarity between comparators . . . must be clearly established in order to be meaningful."  *Id.*, (*quoting Lightner v. City of Wilmington*, *N.C.*, 545 F.3d 260, 265 (4th Cir. 2008).  Here, the Magistrate Judge recommends finding that Cooper and Scott were not similarly situated to Plaintiff, because by law, the County Supervisor who oversaw hiring for the Authority did not have power over the elected officials for whom Cooper and Scott worked. *Id.* at 15-16 (*citing* S.C. Code Ann. § 4-9-430 ("With the exception of organizational policies

10

established by the governing body, the county supervisor shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by general law of the State.")).  Because he finds that Cooper and Scott were not similarly situated to Plaintiff, and Plaintiff did not note any other similarly situated employees, the Magistrate Judge recommends finding that Plaintiff failed to meet her burden regarding similarly situated employees, and thus her *prima facie* case for race discrimination under Title VII fails.  *Id.* at 16.  The Magistrate Judge therefore recommends granting summary judgment for Defendants on Plaintiff's race discrimination claim.  *Id.*

In her objections, Plaintiff argues that Cooper and Scott were sufficiently similar to Plaintiff, such that Plaintiff met her burden of proof regarding similarly situated employees outside the protected class.  Pl. Objs., ECF No. 55 at 5-6.  Plaintiff acknowledges that Cooper's position with the Probate Judge, and Scott's position with the Treasurer were positions hired by elected officials, unlike her own position.  *Id.* at 6.  Plaintiff argues, however, that Cooper and Scott's employment classifications, like her own, were designated by the County Controller, who denied Plaintiff a part-time position.  *Id.*  Plaintiff also argues that Cooper's original County position (where Cooper worked part-time before moving to the Probate Judge's office) was with the County Tax Collector, an office where hiring is overseen by the same County Supervisor and approved by the same County Controller who oversaw hiring for Plaintiff's department.  *Id.* at 5-6.  Even if Cooper and Scott's employment classifications were designated by the County Controller,[3] Cooper and Scott were not employed in the same department as Plaintiff.  Unlike Plaintiff, both Cooper and Scott

---

[3] The Court cannot find support for this assertion in the record.  The County Controller was responsible for checking employment status forms to: 1) verify employment within the department reported, 2) check that the hiring had been approved, and 3) see that the amount to be paid was what had been budgeted.  Underwood Dep. at 69-70 (ECF No. 32-8 at 5-6).  Those responsibilities are not the same, however, as "designating" employment classifications.

11

worked for elected officials who oversaw hiring for their respective departments. Even if Cooper was originally employed with the Tax Collector, where oversight is more similar to the Authority, she received her position with benefits in the Probate Judge's office by applying for the job, Cooper Dep. at 6-7 (ECF No. 32-18 at 3-4), whereas Plaintiff admits she never applied for any County positions other than her current temporary position. Pl. Dep. at 122 (ECF No. 43-1 at 125). Because Scott and Cooper work for different departments where hiring is differently overseen from Plaintiff's Department, and because Plaintiff never applied for the type of position Cooper obtained, Cooper and Scott are not similarly situated to Plaintiff. Therefore, the Court agrees with the Magistrate Judge that Plaintiff failed to meet her burden of showing that similarly situated employees who were not members of the protected class were treated more favorably. As a result, Plaintiff fails to show a *prima facie* case of Title VII race discrimination, and it is thus proper to grant Defendants' Motion for Summary Judgment on Plaintiff's race discrimination claim.

## III.   Retaliation

Plaintiff also argues that the Magistrate Judge erred in recommending that Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim should be granted. Pl. Objs., ECF No. 55 at 6-7. In the R & R, the Magistrate Judge finds that Plaintiff was not proceeding with her retaliation claim under the direct evidence method of proof, but under the *McDonnell Douglas* framework. *See* R&R, ECF No. 54 at 16-17. Plaintiff did not object to this analysis, *see* Pl. Objs., ECF No. 55, and the Court finds no clear error.

Under the *McDonnell Douglas* framework, plaintiff must first establish a *prima facie* case for retaliation by showing: "'(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected

12

activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2011) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)). Once Plaintiff shows a *prima facie* case of retaliation, Defendant can rebut the presumption by showing a non-retaliatory reason for its actions. *Matvia*, at 271; *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 258 (4th Cir. 1998); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). After Defendant makes this showing, Plaintiff must present sufficient evidence that Defendant's reason is pretextual to create a genuine issue of material fact. *Matvia*, 259 F.3d at 271; *Laughlin,* 149 F.3d at 258; *Ross*, 759 F.2d at 365.

  **A.** ***Prima Facie* Case**

  Applying the *McDonnell Douglas* framework, the Magistrate Judge here recommends finding that Plaintiff failed to establish a *prima facie* case of retaliation because she did not show she had engaged in a protected activity. R&R, ECF No. 54 at 17-18. For an activity to be a protected activity within Title VII, Plaintiff must show she opposed an employment practice made unlawful by Title VII which she reasonably believed had occurred or was occurring. *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir. 1990). The activity must be related to activity proscribed by Title VII. "[T]he 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful *by Title VII*. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. 1999) (emphasis in original).

  Plaintiff argues that she established a *prima facie* case for retaliation because she complained to her manager, co-worker, and the County Director of Finance and Administration

about different treatment related to her employment classification, Pl. Mem., ECF No. 43 at 23-24 (*citing* ECF 43-7, ECF 43-12, ECF 43-14), but remained a temporary employee without health insurance and other benefits. *Id*. Plaintiff alleges that the County and County administrators retaliated against her due to her prior involvement in a lawsuit over the county animal shelter, and due to her husband being the Mayor of Kingstree. Pl. Dep. at 101-108, 114-15, 137 (ECF No. 43-1 at 37-45, 117-18, 140). Defendants argue that neither the Plaintiff's prior participation in the lawsuit over the animal shelter, nor Plaintiff's being married to the Mayor of Kingstree qualify as protected activity under Title VII, and therefore Plaintiff failed to show a *prima facie* case of retaliation. Def. Mem., ECF No. 32-1 at 13-14.

The Magistrate Judge recommends finding that Plaintiff failed to show a *prima facie* case of retaliation because she did not show that she engaged in protected activity. The Magistrate Judge finds that Plaintiff's complaints to her manager, co-worker, and the County Director of Finance and Administration did not contain any allegations of retaliation due to race. R&R, ECF No. 54 at 17-18. "Plaintiff makes no mention in her response of complaining of being treated differently because of her race, nor does she point to any evidence in the record of the same." *Id.* at 18. The Magistrate Judge then finds that neither Plaintiff's being married to the Mayor of Kingstree, who was a political opponent of the County Supervisor, nor Plaintiff's having participated in the animal shelter lawsuit as a member of the animal shelter board are protected activities under Title VII, since Title VII provides protection only within specified areas, none of which apply here. *Id.*

In her objections, Plaintiff argues that she met her burden of showing a protected activity. Pl. Objs., ECF No. 55 at 6. She argues that she showed protected activity because she: 1) testified that she felt she was treated differently because of her race, *id.* at 7 (*citing* Pl. Dep. at 99 (ECF No.

14

43-1 at 112)), 2) complained to her co-worker, manager, and the County Director of Finance and Administration, *id.*, (*citing* Pl. Mem., ECF 43 at 23-24), and 3) did not meet with the County Supervisor or anyone else in personnel to complain about being treated differently because of her race, "because she felt as if such reporting would be futile," *id.* (*citing* Pl. Dep., at 183-84). [4]

None of the actions Plaintiff points to in her objections are protected actions under Title VII. Plaintiff's testimony that she felt she was treated differently based on her race is based on the purported difference between Plaintiff's employment classification and Scott and Cooper's employment classification. As has already been noted in the section on race discrimination, *infra*, Scott and Cooper were not similarly situated to Plaintiff. Moreover, as Plaintiff herself admits, she never reported her feelings of race discrimination to anyone in personnel. Plaintiff cannot seek protection from retaliation for a protected action under Title VII when she never engaged in any action. Finally, Plaintiff's objection noting her complaints to her co-worker, manager, and the County Director of Finance and Administration reference Plaintiff's memorandum, which itself references three[5] documents in the record. *See* Pl. Mem., ECF No. 43 at 23 (*citing* ECF Nos. 43-7, 43-12, 43-14). In none of the three documents referenced does the Plaintiff actually allege discrimination or retaliation *because of* race, or for that matter, because of any other classification protected under Title VII. "'The list of impermissible considerations within the context of [Title VII] employment practice is both limited and specific: "race, color, religion, sex or national origin." We are not free to add our own considerations to the list.'" *Balazs v. Liebenthal*, 32 F.3d 151, 159

---

[4] The Court notes that pages 183-184 of Plaintiff's Deposition cited in Plaintiff's Objections were not included in the record. The Court believes it is likely that the reference to "Pl. Dep. 183-184" is a scrivener's error, and Plaintiff meant to refer to pages 134-135 of Plaintiff's Deposition (ECF No. 43-1 at 137-138), where Plaintiff testifies that she never reported to personnel that she felt discriminated against because there was no need.

[5] The Court notes that documents ECF 43-7 and ECF 43-12 appear to be the same letter. There are, therefore, substantively only two documents underlying this claim by Plaintiff. Nonetheless, the Court refers to three documents, since there are three separate exhibits referenced in the record.

(4th Cir. 1994) (*quoting Holder v. City of Raleigh*, 867 F.2d 823, 826 (4th Cir. 1989)).  Plaintiff has only alleged retaliation based upon classifications not protected under Title VII (prior lawsuit participation, and being married to a political opponent of the County Supervisor), and never took any action to oppose any race discrimination she perceived in employment classification. Therefore, the Court agrees with the Magistrate Judge that Plaintiff has failed to present a *prima facie* case for retaliation in violation of Title VII.  It is thus appropriate to grant Defendants' Motion for Summary Judgment on the retaliation claim.

## IV.    State Law Claims

In addition to her federal claims under Title VII, Plaintiff brought state law claims for breach of contract and civil conspiracy.  The Magistrate Judge recommends that, having granted summary judgment to Defendants on the federal claims, the Court remand the state claims to state court.  R&R, ECF No. 54 at 18-20.  If the Court grants summary judgment to Defendants on the federal claims, Plaintiff does not object to recommended remand.  Pl. Objs., ECF No. 55 at 7. Defendants object to the remand, arguing that the state law claims do not involve complicated areas of law, and that it would be unfair to Defendants to send the matter back to state courts after nearly two years in federal court.  Defs. Objs., ECF No. 57 at 1-2.

As the Fourth Circuit has explained, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."  *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  In determining whether to retain jurisdiction over state law claims, courts look at "convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial

economy." *Shanaghan*, 58 F.3d at 110. Further, the Supreme Court has warned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . . [I]f federal claims are dismissed before trial . . . the state law claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Based upon those guidelines, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over the state law claims, and remand those claims to state court. Since the case was originally filed in state court, the Magistrate Judge finds it would not be unfair to the parties to return to state court. R&R, ECF No. 54 at 19. Further, the Magistrate Judge finds that the state law issues here – breach of contract and civil conspiracy – are fundamentally state law claims. *Id.* Finding no error in this analysis, the Court accepts the Magistrate Judge's recommendation to remand Plaintiff's state law claims to state court.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including Defendants' Motion for Summary Judgment, Plaintiff's Memorandum in Opposition, Defendants' Reply to Plaintiff's Response, the R & R, Plaintiff's Objections to the R & R, Defendants' Objections to the R & R, and Defendants' Reply to Plaintiff's Objections. For the reasons stated above and by the Magistrate Judge, the Court hereby overrules Plaintiff's and Defendants' objections, and adopts the Magistrate Judge's R & R.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's Title VII race discrimination and retaliation claims. **IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining

state law claims for breach of contract and civil conspiracy. This action is **REMANDED** to the Williamsburg County Court of Common Pleas for further proceedings regarding Plaintiff's remaining causes of action.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
June 30, 2015

18